IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

| | |
|---|---|
| WILSON J. CAMPBELL, | |
| Plaintiff, | Civil No. 11-642-ES-SCM |
| v. | |
| SEDGWICK DETERT, MORAN & ARNOLD, MICHAEL TANENBAUM, JAMES KEALE, THOMAS ROBERTSON, et al., | **OPINION AND ORDER ON PLAINTIFF'S MOTIONS FOR LEAVE TO AMEND AND DEFENDANTS' MOTIONS FOR A PROTECTIVE ORDER AND SANCTIONS** |
| Defendants. | **[D.E. 53, 59, 65]** |

## I. INTRODUCTION

Pending before this Court are three motions:  A motion for a protective order [D.E. 53] and motion for sanctions [D.E. 59] filed by defendants James Keale, Thomas Robertson, Sedgwick Detert, Moran & Arnold (hereafter, "Sedgwick" ), and Michael Tanenbaum (collectively, "Defendants"); and plaintiff Wilson Campbell's ("Plaintiff") motion for leave to file an amended complaint [D.E. 65].  Opposition has been filed with regard to each of the motions.  The Court has considered the parties' submissions pursuant to Federal Rule of Civil Procedure 78(b), and for the reasons set forth below the Court grants in part and denies in part Defendants' motion for a protective order, denies Defendants' motion for sanctions, and grants in part and denies

1

in part Plaintiff's motion for leave to file his Amended
Complaint.

## II.  BACKGROUND

A detailed history of the events underlying this action can
already be found in Magistrate Judge Waldor's July 2, 2012,
Opinion regarding Plaintiff's first motion for leave to file an
amended complaint [D.E. 44].  (*See* D.E. 60, Judge Waldor's July
2, 2012, Opinion).  Presently, Plaintiff seeks to make the
following amendments to his Complaint:  Add two individuals,
Michael McGeehon and David Saunders, as named defendants; add a
breach of contract claim; and clarify and insert additional
factual allegations.  Judge Waldor denied Plaintiff's first
motion requesting identical amendments to the Complaint without
prejudice, finding that Plaintiff did not provide a reason for
his delay in seeking to add Saunders and McGeehon as defendants,
did not fully develop his factual allegations against Saunders,
and did not properly plead a claim for breach of contract.  *Id.*
Judge Waldor then directed Plaintiff to file an appropriate
motion to amend within fourteen days of the entry of the Opinion
and Order.  *Id.*

Plaintiff filed the instant motion to amend on July 17,
2012.  Plaintiff alleges that the instant motion to amend
addresses the defects noted in Judge Waldor's July 2, 2012,

2

Opinion, and satisfies the requirements set forth in the Federal Rules of Civil Procedure regarding motions to amend the pleadings. (*See* D.E. 65, Plaintiff's Brief in Support of Motion to Amend). Defendants oppose Plaintiff's motion, and argue that the instant motion is still deficient for all of the reasons set forth in the July 2, 2012, Opinion. (*See* D.E. 68, Defendants' Brief in Opposition to Plaintiff's Motion to Amend).

Discovery in this case has been ongoing since September of 2011, and has been plagued with various disputes since then. (*See, e.g.*, Docket Entry Nos. 20, 25, 26, 31, 32, 33, 34). Defendants allege that Plaintiff is using the discovery process to harass and overburden Defendants, and have filed the instant motion for a protective order as a result. (*See* D.E. 53-1, Defendants' Brief in Support of Motion for Protective Order). Defendants assert that they have already provided "72 answers to interrogatories, 94 responses to document requests and 205 responses to requests to admit," but that Plaintiff has nevertheless served an additional 98 requests, consisting of interrogatories, document demands, requests for admissions, and a notice to inspect the premises of Sedgwick. (*See* D.E. 58, Defendants' Reply Brief in Support of Motion for Protective Order, at *2). Defendants allege that the requested discovery is, *inter alia*, cumulative, unduly burdensome, and irrelevant. *Id.* Plaintiff opposes the motion for a protective order, and

3

contends that his discovery requests are relevant and not unduly burdensome or cumulative. (*See* D.E. 55, Plaintiff's Brief in Opposition). Additionally, Plaintiff asserts that discovery in this matter only effectively began on January 9, 2012, when the Court ordered Defendants to produce discovery, and was then stalled in May of 2012 when Defendants filed the instant motion. *Id.* at *2.

Finally, Defendants have also filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 16. (*See* D.E. 59, Defendants' Motion for Sanctions). The basis for Defendants' motion is Plaintiff's failure to appear for a court-ordered, in-person hearing on June 15, 2012. (*See* D.E. 59-1, Defendants' Brief in Support of Motion for Sanctions). Plaintiff opposes the motion for sanctions, and asserts that his failure to attend the hearing was the result of his own scheduling mistake and that sanctions are not appropriate. (*See* D.E. 66, Plaintiff's Letter Brief in Opposition).

**III. DISCUSSION**

In the interest of clarity, the Court will address each of the pending motions separately.

### A. Plaintiff's Motion to Amend

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "the court should freely give leave to amend when justice so

4

requires."  While leave to amend is typically granted, it is not
an absolute right and the decision to amend rests within the
sound discretion of the district court.  *Foman v. Davis*, 371
U.S. 178, 182 (1962).  Courts liberally grant motions to amend
if the underlying facts or circumstances relied upon may be a
proper subject for relief, granting the amendment would not be
unduly prejudicial to the non-moving party, and the movant has
not acted with undue delay, bad faith, or dilatory motive.  *Id.*
An amendment may only be granted if it is not futile, and the
opposing party bears the burden of establishing that a proposed
amendment should be denied.  *Id.*

Plaintiff seeks to amend his Complaint as follows:  to add
Michael McGeehon, Sedwick's General Counsel, and David Saunders,
Sedgwick's Chief of Human Resources, as named defendants; add a
claim for breach of contract; and "clarify allegations raised in
Plaintiff's Complaint and assert additional factual allegations
based on facts uncovered during discovery."  (*See* D.E. 65,
Plaintiff's Brief in Support of Motion to Amend, at *2).

First, the Court will address the proposed McGeehon
amendment.  An amendment is futile if it fails to state a claim
upon which relief may be granted or advances a claim that is
legally insufficient on its face.  *See Great Western Mining &*
*Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir.
2010)(citing *In re Merck & Co. Sec., Derivative, & ERISA Litig.*,

493 F.3d 400 (3d Cir. 2007)).   "In assessing futility, the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."   *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).   Accordingly, an amendment is futile if, accepting all of the facts alleged in the pleading as true, the party has failed to plead enough facts to state a claim to relief that is plausible on its face.   *See Duran v. Equifirst Corp.*, Civil No. 09-03856, 2010 WL 918444, at *2 (D.N.J. Mar. 12, 2010) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).   Accordingly, this Court must first consider whether Plaintiff has alleged sufficient facts to conclude that McGeehon provided substantial assistance or encouragement of the employer's conduct alleged to be in violation of the New Jersey Law Against Discrimination ("NJLAD").   *See id.*

Here, Plaintiff alleges that McGeehon had knowledge of Plaintiff's August 14, 2008, and September 2008, internal complaints regarding alleged discrimination, and that McGeehon and the named Defendants participated in a plot to retaliate against Plaintiff. (*See* D.E. 65-3, Plaintiff's Proposed Amended Complaint, at ¶¶ 37, 44, 69-86).  Plaintiff also alleges that discovery produced in January of 2012 indicates that Defendant Robertson had a privileged discussion with McGeehon and Saunders on February 4, 2009, after Robertson learned of the judicial

6

complaint filed against Plaintiff, and that more than ten e-mails between McGeehon and Robertson regarding Plaintiff's termination were exchanged on the morning of February 5, 2009, the day that Plaintiff was allegedly forced to resign from Sedgwick.  *See id.* at *6-7.  The Court notes that in the July 2, 2012, Opinion Judge Waldor, before describing McGeehon's alleged role in the lawsuit, noted that "Plaintiff has alleged several facts that, taken as true, indicate McGeehon played a significant role in Plaintiff's termination." (*See* D.E. 60, July 2, 2012 Opinion, at *11).  Judge Waldor concluded her evaluation of futility with regard to the McGeehon amendment by finding that the allegations in the proposed amended Complaint against McGeehon in his individual capacity, taken as true, "would likely not be futile."  *Id.*  This Court agrees. Accordingly, the Court finds that the proposed claims against McGeehon in his individual capacity are not futile.  *See Foman v. Davis*, 371 U.S. at 182.

With regard to the timeliness of the proposed amendment to add McGeehon as a named defendant, the Court notes that Plaintiff appears to have had some knowledge of McGeehon's involvement in Plaintiff's termination at the time the original Complaint was filed.  Indeed, Judge Waldor stated in the July 2, 2012, Opinion that Plaintiff must provide some explanation as to

why McGeehon could not have been added earlier in this action. (*See* D.E. 60, July 2, 2012, Opinion, at *8).

Plaintiff alleges that his delay in requesting leave to amend the Complaint to add both Saunders and McGeehon stems from his obtaining a privilege log through discovery in January of 2012 that allegedly shows that McGeehon "authored and sent an e-mail on February 4, 2009 entitled 'Associate Termination' to Saunders with a copy to Defendant Tanenbaum, Sedgwick's Chair." (*See* D.E. 65, Plaintiff's Brief in Support of Motion to Amend, at *6).  Plaintiff contends that he did not have access to the various e-mails listed on the privilege log that allegedly show McGeehon's and Saunders's involvement in Plaintiff's termination, and that Plaintiff was not aware of said emails when he filed his Complaint in February of 2011.  *See id.* at *6-8.  Accordingly, Plaintiff argues that he did not know the extent of both McGeehon's and Saunders's involvement in his termination when he filed his initial Complaint, and therefore his instant motion to amend is timely and in good faith.  *Id.* at *7.

Defendants argue that Plaintiff's delay in seeking leave to amend the Complaint is undue and should accordingly be denied. Specifically, Defendants allege that, by letter dated June 5, 2009, Plaintiff's former counsel contended that Plaintiff participated in a conference call with McGeehon, Sedgwick's

8

general counsel, regarding his resignation from Sedgwick.  (*See* D.E. 68, Defendants' Brief in Opposition, at *13).  In reply, Plaintiff reiterates that it was not until January of 2012 that he learned that McGeehon had an "active role" in the termination, and was not merely a "mouthpiece," and therefore his delay in seeking leave to amend is not undue.  (*See* D.E. 69, Plaintiff's Reply Brief, at *1-2, D.E.).

In light of all of the above, the Court finds that Plaintiff's explanation for his delay in seeking to add McGeehon is sufficient.  *See Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001) (stating that courts, in considering the question of undue delay, "focus on the movant's reasons for not amending sooner"). "The passage of time, without more, does not require that a motion to amend a complaint be denied[…]." *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984).  Considering that Plaintiff alleges to not have learned of the extent of McGeehon's involvement in discussions regarding his termination until receiving discovery in January of 2009, the Court, in its discretion, does not consider Plaintiff's delay in adding McGeehon as a named defendant to be undue.  *See Cureton v. NCAA*, 252 F.3d at 273; *Luppino v. Mercedes-Benz USA, LLC*, Civil No. 09-5582, 2012 WL 850743, at *4 (D.N.J. Mar. 8, 2012) (granting motion to amend where Plaintiff could have named defendants months earlier).  Furthermore, the Court finds that the addition

of McGeehon will not cause undue prejudice, as much of the same discovery that has already been produced in this case or is the subject of currently pending discovery disputes should also apply to McGeehon. *See Adams v. Gould*, 739 F.2d 858, 868 (3d Cir. 2001) (stating that amended claims are not likely to cause prejudice to opposing party where addition of new claims will not require additional, extensive discovery).

Next, the Court will address Plaintiff's request to add Saunders as a named defendant.  Plaintiff's Proposed Amended Complaint alleges that Saunders received an email from McGeehon regarding Plaintiff's termination from the Firm.  (*See* D.E. 65-3, Proposed Amended Complaint, at *14, ¶70).  The e-mail was allegedly sent to Saunders on February 4, 2009, one day before Defendant Robertson allegedly informed Plaintiff that he would be fired from the firm if he did not immediately resign.  (*See id.*; *see also* D.E. 65, Plaintiff's Brief in Support of Motion to Amend, at *6).  Plaintiff further alleges that on February 5, 2009, the Firm's Human Resources, of which Saunders is Chief, instructed Defendant Robertson to take Plaintiff's building access card.  *Id*.

Defendants argue that the proposed amendment to add Saunders is futile, and that Plaintiff's motion should accordingly be denied.  A pleading is futile if the facts alleged would not allow a court to draw a reasonable inference

that the defendant is liable for the alleged misconduct.  *See Ashcroft v. Iqbal*, 556 U.S. 662, at 678 (2009).  In the instant matter, Plaintiff seeks to amend his Complaint to add claims against Saunders in his individual capacity.

After considering the parties' submissions, the Court finds that Plaintiff's Proposed Amended Complaint does not support a claim of individual liability as to Saunders under NJ LAD.  Pursuant to N.J.S.A. 10:5-12(e), a plaintiff must allege sufficient facts to conclude that Saunders provided "substantial assistance or encouragement" of the employer's conduct alleged to be in violation of NJ LAD.  Here, the Proposed Amended Complaint merely alleges that Saunders received an email entitled "Associate Termination" from McGeehon, participated in discussions with McGeehon and Robertson regarding the judicial complaint filed against Plaintiff, and instructed Defendant Robertson to collect Plaintiff's building access card.  Such facts illustrate that Saunders, as Chief of Human Resources, likely had knowledge of Plaintiff's termination and was involved to some degree in finalizing Plaintiff's departure from the firm.  The Court finds that these facts do not support the contention that Saunders provided "substantial assistance or encouragement" of the misconduct alleged in the proposed amended Complaint within the meaning of NJ LAD.  *See Failla v. City of Passaic*, 146 F.3d 149, 158-59 (3d Cir. 1998).  Rather, the Court

11

finds that receiving emails regarding the termination of an
employee and providing instructions to collect said employee's
building access card are consistent with the customary duties
and protocols intrinsic to Saunders's role as a human resources
director.  Accordingly, the Court finds the proposed Amended
Complaint to be futile as to the addition of Saunders.

The Court will next turn to Plaintiff's proposed breach of
contract amendment.  Plaintiff's argument regarding the proposed
breach of contact claim revolves around Sedgwick's Employee
Assistance Program ("EAP"), a benefit program allegedly
available to Sedgwick employees that is designed to assist with
personal issues, including legal assistance.  (*See* D.E. 65,
Plaintiff's Brief in Support of Motion to Amend, at *9-10).
Plaintiff claims that when Defendants terminated Plaintiff he
was denied benefits to which he was entitled pursuant to the
EAP, and as a result incurred damages, including attorney's fees
for legal consultations that would have normally been covered by
the EAP.  *Id.*

Defendants argue that Plaintiff has failed to state a cause
of action for breach of contract, as Plaintiff has not
explicitly claimed that the parties entered into a contract
regarding the EAP.  (*See* D.E. 68, Defendants' Brief in
Opposition, at *19).  Instead, Defendants assert that Plaintiff
has merely alleged that he was afforded certain benefits under

12

the EAP as part of his employment package, and that Sedgwick ceased to provide those benefits to Defendant after Plaintiff's departure from the firm.  *Id.*  Defendants argue that Plaintiff has not alleged "that Defendants failed to provide him a benefit to which he was entitled while employed by Sedgwick, nor does Plaintiff allege that the Firm agreed to continue to provide him EAP benefits after his separation of employment," and that any obligation Sedgwick may have had to provide Plaintiff with EAP benefits ceased with the termination of his employment at the firm.  *Id.*  Defendants further argue that Plaintiff has not alleged that any of the individual defendants were a party to any contract or implied contract between himself and Sedgwick. *Id.*

A party alleging a breach of contract satisfies its pleading requirement if it alleges: (1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party performed its own contractual duties.  *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.*, 210 F. Supp. 2d 552, at 561 (D.N.J. 2002).  Here, Plaintiff essentially alleges that: (1) the EAP benefits were part of his employment contract with Sedgwick; (2) Sedgwick breached its obligations to Plaintiff regarding the EAP benefits; (3) Plaintiff suffered damages as a result of Sedgwick's breach; and (4) Plaintiff performed all of his own contractual duties until he was

wrongfully terminated.  (*See* D.E. 65, Plaintiff's Brief in Support of Motion to Amend, at *9-10).  The Court, bearing in mind the liberal approach to pleadings embodied by Rule 15, finds that Plaintiff has sufficiently pled a claim for breach of contract.  *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (3d Cir. 2006); *Foman v. Davis*, 371 U.S. at 182.  Accordingly, Plaintiff's proposed amendment to add a claim for breach of contract is granted as to Defendant Sedgwick.

As to the individually named Defendants, it is well established that a claim for breach of contract cannot be maintained against an individual that is not a party to the underlying contract.  *Figueroa v. City of Camden*, 580 F.Supp.2d 390, 408 (D.N.J. 2008).  Here, Plaintiff has not alleged facts that support the existence of a contract between himself and the individually named Defendants.  *See id.* (dismissing common law action for breach of contract where plaintiff firefighter did not allege individual defendant was a party to the contract between city and its firefighters).  Accordingly, the proposed breach of contract claim against the individual Defendants fails to state a claim upon which relief may be granted and therefore must be denied.  *See id.*

Next, the Court will address the factual allegations that Plaintiff seeks to add to his Complaint.  Defendants assert that many of the amended factual allegations appear to be immaterial

14

to Plaintiff's claims, redundant, or merely summarize discovery that has been conducted to date. (*See* D.E. 68, Defendants' Brief in Opposition, at *22). Plaintiff counters that the instant motion for leave to file a proposed amended complaint was prompted by new information found in discovery, and essentially argues that the added and amended factual allegations clarify his original pleading. (*See* D.E. 65, Plaintiff's Brief in Support of Motion to Amend). The Court has reviewed Plaintiff's amended factual allegations and does not find the proposed amendments to be at odds with Rule 15. As noted above, leave to amend is freely given when justice so requires, and courts "have shown a strong liberality … in allowing amendments under Rule 15(a)." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (internal citations omitted); *see also Foman v. Davis*, 371 U.S. at 182. The Court will accordingly grant Plaintiff's motion to amend as to the proposed factual allegations.

Finally, the Court will briefly address Defendants' statute of limitations argument with respect to the proposed individually named defendants. Defendants note that NJ LAD is governed by a two year statute of limitations, and argue that since Plaintiff alleges that he was wrongfully terminated on February 5, 2009, the applicable statute of limitations on Plaintiff's retaliation and discrimination claims under NJ LAD

15

expired on February 5, 2011. (*See* D.E. 68, Defendants' Brief in
Opposition, at *22-23). Thus, Defendants argue that Plaintiff's
proposed NJ LAD claims against McGeehon are barred by the
statute of limitations, and are therefore futile unless they
relate back to the original complaint in accordance with Federal
Rule of Civil Procedure 15(c). *Id.* at 23. Defendants assert
that the proposed McGeehon amendment does not relate back to
Plaintiff's original Complaint, as the claims against McGeehon
do not arise out of the conduct that is set forth in the
original pleading. *Id.* at *24.

Three conditions must be met for the successful relation
back of an amended complaint that adds new parties: (1) the
additional claim arose out of the same conduct as the original
pleading; (2) the newly named party received such notice of the
institution of the action within 120 days of the complaint so
that the party will not be prejudiced in maintaining a defense
on the merits; and (3) the newly named party must have known or
should have known within 120 days that, but for a mistake made
by the plaintiff concerning the newly named party's identity,
the action would have been brought against the newly named party
in the initial pleading. *Singletary v. Pennsylvania Dept. of
Corrections*, 266 F.3d 186, 189 (3d Cir. 2001) (internal
quotations and citations omitted). The first condition is met
in this action because it is clear that the claims against

16

McGeehon arise out of the same conduct alleged in the original pleading, namely the alleged wrongful termination of Plaintiff. It is also clear that the second condition is met, as McGeehon had both actual notice of the instant lawsuit and sufficient notice of the action under Rule 15(c)(3) by virtue of sharing counsel with the other individually named Sedgwick Defendants. *See Singletary*, 266 F.3d at 196-98.  Finally, the third condition for relation back is also met in this matter, as Plaintiff has plausibly argued that he was only learned during discovery that McGeehon may have had an active role in Plaintiff's alleged termination, rather than the role of a mere "mouthpiece."  (*See* D.E. 69, Plaintiff's Reply Brief, at *1-2). Accordingly, the Court finds that the McGeehon amendment relates back to the initial filing and is not barred by the statute of limitations.  *See Singletary*, 266 F.3d at 196-98.

### B. Defendants' Motion for a Protective Order

Next, the Court will consider Defendants' motion for a protective order.  Defendants contend that there exists a good faith need for a protective order regarding Plaintiff's discovery requests, as Plaintiff's requests are voluminous, unduly burdensome, and harassing.  (*See* D.E. 53-1, Defendants Brief in Support of Motion, at *6-7).  Specifically, Defendants seek a protective order: prohibiting Plaintiff from serving additional discovery; permitting Defendants to not be required

17

to respond to Plaintiff's Third Request for Admissions; permitting Defendants to not be required to respond to Plaintiff's Second Set of Interrogatories to Defendant Sedgwick; permitting Defendants to not be required to respond to Plaintiff's Fourth Request for Admissions; permitting Defendants to not be required to respond to Plaintiff's Third Request for Documents; permitting Defendants to not be required to respond to document requests attached to the notices to depose James Keale, Thomas Robertson, Michael Tanenbaum, Suzanne Horn, David Saunders, and Craig Barnes; and ordering that the depositions of Craig Barnes and David Saunders be conducted in California. (*See* D.E. 53-6, Defendants' Proposed Order).

Pursuant to Federal Rule of Civil Procedure 26(b), a court may order the discovery of any matter relevant to a party's claims, defenses, or the subject matter involved in the litigation upon a finding of good cause.  Rule 26 is construed liberally, and relevance is a broader inquiry at the discovery stage of litigation than at the trial stage.  *Tele-Radio Sys. Ltd. v. DeForest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981) (citations omitted).  While relevant information need not be admissible at trial, the party seeking discovery must "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000).

18

While Rule 26 is generally construed liberally, courts have authority to limit a party's pursuit of information that would otherwise be discoverable where the burden of a discovery request is likely to outweigh the benefits.  *See* Fed. R. Civ. P. 26(b)(2)(C); *see also Bayer AG v. Betachem, Inc.*, 173 F.3d 191 (3d Cir. 1999).  Accordingly, a discovery request may be denied if the court determines that there exists a likelihood that the resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the discovery after assessing the following factors: (1) the unreasonably cumulative or duplicative effect of the discovery; (ii) whether the party seeking discovery has had ample opportunity to obtain the information by other discovery; and (iii) the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.  Fed. R. Civ. P. 26(b)(2)(C).  The purpose of this rule of proportionality is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry.  *A & B Ingredients, Inc. v. Hartford Fire Ins. Co.*, 2010 WL 335616, at *3 (D.N.J. Jan. 29, 2010) (quoting *Bowers v. Nat'l Collegiate*

*Athletic Assoc.*, No. 97-2600, 2008 LEXIS 14944, at *14 (D.N.J. Feb. 27, 2008).

Courts have further authority to limit the scope of discovery through the issuance of a protective order pursuant to Federal Rule of Civil Procedure 26(c).  Pursuant to Rule 26(c), upon a finding of good cause, the court may issue a protective order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.  *See Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1112, fn. 3 (3d Cir. 1986), *cert. denied*, 486 U.S. 976 (1987).  Courts are afforded broad latitude under Rule 26(c) in tailoring a protective order to the circumstances of a particular case, and accordingly may issue an order:  forbidding the disclosure of discovery; specifying terms, including time and place for the disclosure of discovery; prescribing a discovery method other than the one selected by the party seeking discovery; and forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters.  *See id.*  In seeking a protective order, a party establishes good cause by demonstrating that disclosure will cause a clearly defined and serious injury.  *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786-87 (3d Cir. 1994).  However, broad allegations of harm do not support a showing of good cause, so the alleged injury must be supported by specific examples and reasons.  *Id.*

In determining whether good cause exists, courts must
employ a balancing test weighing "the requesting party's need
for information against the injury that might result if
uncontrolled disclosure" is granted.  *Id.* at 787 (internal
quotations omitted).  If the court ultimately finds that
discovery policies require that the materials be disclosed, the
issue then becomes whether they should be disclosed in a
specific way, or whether any limitations of disclosure should be
ordered.  *Id.*  In making this determination, courts consider the
following factors:  (i) whether the information is being sought
for a legitimate purpose or improper purpose; (ii) whether
disclosure will promote fairness and efficiency among litigants;
and (iii) whether a party benefiting from the order is a public
entity, public official or private litigant and whether the case
involves matter of legitimate public interest.  *Id.* at 787-88.
The party requesting the protective order bears the burden of
establishing an alleged lack of relevancy or undue burden.  *A &*
*B Ingredients, Inc. v. Hartford Fire Ins. Co.*, 2010 WL 335616,
at *4 (D.N.J. Jan. 29, 2010).

Defendants assert that good cause exists for the entry of a
protective order because Plaintiff's requests are
"disproportionate to the claims in this matter and will work a
clearly defined and serious injury upon Defendants."  (*See* D.E.
53-1, Defendants' Brief in Support of Motion, at *11).

21

Defendants argue that the sheer volume of discovery is unduly burdensome, harassing, and oppressive given the nature of the claims in this action.  *Id.*  In support of their argument Defendants assert that, despite having already provided over 300 responses to discovery requests by Plaintiff, Plaintiff has requested an additional 98 requests, most of which are cumulative and not reasonably calculated to lead to the discovery of admissible evidence.  (*See* D.E. 58, Defendants' Reply Brief, at *2).  Defendants argue that Plaintiff's discovery requests relating to the termination of other former Sedgwick attorneys is duplicative and not relevant considering the circumstances that precipitated Plaintiff's resignation.  *Id.* at *15-17.  Defendants further argue that the electronic discovery sought by Plaintiff, namely documents and emails for the period of January 29, 2009 to May 1, 2009 concerning Plaintiff that were received or sent from various Sedgwick employees and persons not employed by Sedgwick but working in Sedgwick's New Jersey office with a Sedgwick email account is burdensome and overly broad in temporal scope since Plaintiff's last day of employment was February 5, 2009.  *Id.* at *17. Likewise, Plaintiff seeks documents and emails sent or received from various Sedgwick employees that reference Plaintiff from as early as January 1, 2007 to the present, and Defendants argue that such requests are also overly broad and burdensome, or have

been previously identified by Defendants and listed on their privilege log. *Id.* at *18. In addition, Defendants note various other discovery requests that they contend are overly broad, irrelevant, or burdensome, such as, *inter alia*, "documents which reflect paid time off for all employees in the Sedgwick New Jersey office from February 2, 2009 to February 6, 2009," and "documents that reflect the gross revenues of Sedgwick from January 1, 2001 to present." *See id.* at *23-24. Similarly, Defendants argue that Plaintiff's request to inspect the premises of Sedgwick's New Jersey Office for the purpose of "measuring, surveying, videotaping, and photographing his former office and the offices of" various Sedgwick employees is irrelevant and unsupported by any reasonable basis. *Id.* at *13-14. The Court will address each category of the discovery at issue in turn.

First, the Court will consider Plaintiff's Second Set of Interrogatories Directed to the Designated Representative of Defendant Sedgwick. (*See* D.E. 53-4, Defendants' Ex. K to Motion for Protective Order, at *62-67). Federal Rule of Civil Procedure 33(a)(2) states that "[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b)," and that an "interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the

interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." The Court has reviewed Plaintiff's Second Set of Interrogatories directed to Sedgwick and finds that the interrogatories do not warrant the entry of a protective order.  Plaintiff's interrogatories are, within the liberal meaning of Rule 26, relevant to Plaintiff's claims.  However, the Court notes that Interrogatory No. 4 is unlimited in temporal scope, and accordingly orders that the temporal scope of Interrogatory No. 4 be limited to a period of five years from February 5, 2004, to February 5, 2009.  (*See* D.E. 53-4, Defendants' Ex. K to Motion for Protective Order, at *67).  If Defendants have previously provided any of the requested information to Plaintiff, or object to a particular interrogatory, Defendants are free to respond accordingly.

Next, the Court will consider Plaintiff's Third and Fourth Requests for Admissions.  Federal Rule of Civil Procedure 36 governs requests for admission, and states that "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents."  Fed. R. Civ. P. 36(a)(1).  The Court has reviewed Plaintiff's Third Request for

24

Admissions to Defendants and finds that the requests for admission are within the liberal meaning of discovery embodied by Rule 26 and do not fall outside the scope of requests for admission as defined by Rule 36. (*See* D.E. 53-4, Defendants' Ex. J to Motion for Protective Order, at *54-60). The Court further notes that Plaintiff's Fourth Request for Admissions requests to admit the genuineness of documents and are appropriately accompanied by copies of the relevant documents in accordance with Fed. R. Civ. P. 36(a)(2). (*See* D.E. 53-5, Defendants' Ex. L to Motion for Protective Order, at *2-5). Therefore, the Court will deny Defendants' motion for a protective order with respect to Plaintiff's Third and Fourth Requests for Admissions. Again, to the extent that Defendants have previously provided any of the requested information to Plaintiff, or object to a particular request, Defendants are free to respond accordingly.

Next, the Court will consider Plaintiff's Third Document Production Demand to Defendants. (*See* D.E. 53-5, Defendants' Ex. M to Motion for Protective Order, at *25-29). Any party may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense, and it is well settled that Rule 26 establishes a fairly liberal discovery policy. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); Fed. R. Civ. P. 26(b)(1). "As a general rule, discovery is

25

permitted of any information that is relevant or may lead to the discovery of relevant evidence." *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 101 (E.D. Pa. 2010).  Federal Rule of Civil Procedure 34 governs the production of documents and reads, in pertinent part, as follows:

   **(a) In General.** A party may serve on any other party a request within the scope of Rule 26(b):

   **(1)** to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:

   **(A)** any designated documents or electronically stored information--including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations--stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or

   **(B)** any designated tangible things; or

   **(2)** to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect,

measure, survey, photograph, test, or sample the
property or any designated object or operation on
it.

Here, Plaintiff has made twenty six (26) requests for the
production of documents, and has also requested documents in
connection with various deposition notices.  (*See* D.E. 53-5,
Defendants' Ex. M to Motion for Protective Order, at *25-29).
The Court has reviewed Plaintiff's Third Document Production
Demand and notes that Plaintiff's requests are reasonably
limited in temporal scope, and reasonably calculated to lead to
the discovery of admissible evidence.  For instance, Request No.
15 seeks "[a]ll documents and e-mails sent by Deborah Lewis from
January 1, 2009 to May 1, 2009 that reference Plaintiff."  *See*
*id.* at *27.  The Court finds that such requests are relevant to
Plaintiff's claims, well within the liberal scope of discovery,
and sufficiently designate which documents Plaintiff seeks.  *See*
*Consolidated Rendering Co. v. Vermont*, 207 U.S. 541, 543-44
(1908) ("We see no reason why all such books, papers and
correspondence which related to the subject of inquiry, and were
described with reasonable detail, should not be called for and
the company directed to produce them.  Otherwise, the State
would be compelled to designate each particular paper which it
desired, which presupposes an accurate knowledge of which
papers, which the tribunal desiring the papers would probably

27

rarely, if ever, have."). Accordingly, the Court will deny Defendants' motion for a protective order with respect to Plaintiff's Third Document Production Demand. However, the Court notes once again that if Defendants have already provided any of the requested information, or object to a particular demand, Defendants are free to respond accordingly.

With regard to the various document demands attached to Plaintiff's deposition notices, the Court finds that a number of the requests do not appear reasonably calculated to lead to the discovery of admissible evidence and warrant the entry of a protective order. Specifically, the Court finds that Request Nos. 10 and 11 attached to the deposition notice for Suzanne Horn [D.E. 53-5, Ex. R, at *52]; and Request Nos. 4, 5, and 7 attached to the deposition notice for David Saunders [D.E. 53-5, Ex. S, at *57] seek financial information from Sedgwick that is irrelevant to Plaintiff's claims. Furthermore, the Court finds that Request No. 6 attached to the deposition notice for David Saunders is unreasonably broad in temporal and geographic scope. See id. That particular request seeks "[a]ll documents that reflect the salary of the highest and lowest paid (non-partner) attorney employed by the New Jersey office from January 1, 2001 to present." Id. Accordingly, the Court orders that the request be amended so as to only pertain to attorneys that graduated from law school between the years 1998 and 2000, and

to the salaries any such attorneys may have had at the time of Plaintiff's termination.

Next, the Court will address Plaintiff's Notice of Inspection. (*See* D.E. 53-5, Defendants' Ex. N to Motion for Protective Order, at *31-33). Plaintiff seeks to inspect the premises of Sedgwick's New Jersey office for the purpose of "measuring, surveying, videotaping, and photographing his former office and the offices of the following employees of Sedgwick: James Keale; Thomas Robertson; Michael Tanenbaum; Suzanne Horn, Sedgwick's Office Manager; Shari Keiser, Associate; Christopher Kehrli, former Associate; and Kecia Barrett-Callahan." (*See* D.E. 53-1, Defendants' Brief in Support of Motion for Protective Order, at *13). Defendants argue that Plaintiff has not made any factual allegations that would provide a basis for his Notice of Inspection, and that Plaintiff is seeking the inspection "for the sole reason to harass and annoy Defendants." *Id.* at *14. Plaintiff argues that he intends to inspect, photograph, and videotape the Sedgwick New Jersey office in order to "aid jurors in their deliberations," by "presenting the jury with photographs showing the location of Plaintiff's office in proximity to several key witnesses," so as to support his claim that he did not voluntarily resign. (*See* D.E. 55, Plaintiff's Brief in Opposition, at *14). While the Court notes that a liberal approach to discovery is generally favored

pursuant to Rule 26, the Court also appreciates Defendants'
concerns regarding the potential for harassment and disruption
with regard to Plaintiff's Notice of Inspection considering the
nature of this case.  Accordingly, the Court hereby orders that
Plaintiff's inspection of Sedgwick's New Jersey Office be set
for a time and date to be determined by Defendants, and that
said inspection shall not exceed sixty minutes.

Lastly, the Court will consider the depositions of Craig
Barnes, a partner in Sedgwick's Los Angeles office, and David
Saunders, Sedgwick's Chief of Human Resources Officer located in
San Francisco.  (*See* D.E. 53-1, Defendants' Brief in Support of
Motion for Protective Order, at *28).  Plaintiff noticed the
depositions of Craig Barnes and David Saunders and identified
Newark, New Jersey as the location of the depositions.  *Id.*
Neither Barnes nor Saunders is a party to this litigation.  *Id.*
Defendants argue that Barnes and Saunders would be unduly
burdened if they were forced to travel to New Jersey for their
depositions, and that Barnes, as a non-party witness, cannot be
compelled to travel more than 100 miles from Los Angeles,
California pursuant to Federal Rule of Civil Procedure
45(c)(3)(A)(ii).  *Id.* at *29.

Rule 30(b)(1) states, in pertinent part, that "a party who
wants to depose a person by oral questions must give reasonable
written notice to every other party.  The notice must state the

time and place of the deposition and, if known, the deponent's
name and address."  Therefore, the default rule is that the
examining party "may set the place for the deposition of another
party wherever he or she wishes subject to the power of the
court to grant a protective order under Rule 26(c)(1)(B)
designating a different place."  Charles Alan Wright, Arthur R.
Miller, Mary Kay Kane, & Richard L. Marcus, *Federal Practice and
Procedure* § 2112 (3d ed.2012).  Under Rule 30(b)(1), an officer,
director, or managing agent of a corporate party may be
compelled to give testimony pursuant to a notice of deposition.
Accordingly, Rule 30(b)(1) is clear in that "the location
designated for the taking of a deposition is solely within the
discretion of the court, thereby requiring each application to
be considered on its own facts and equities."  *Tomingas v.
Douglas Aircraft Co.*, 45 F.R.D. 94, 97 (S.D.N.Y. 1968) (citing
*Branyan v. Koninklijke Luchtvaart Maatschappij*, 13 F.R.D. 425,
429 (S.D.N.Y. 1953)).

        However, the general rule regarding the setting for the
location of a corporate party's deposition is that the
deposition ordinarily takes place at the corporate party's
principal place of business.  *See Cadent Ltd. v. 3M Unitek
Corp.*, 232 F.R.D. 525, 628 (C.D. Cal. 2005) (internal citations
omitted).  "Notwithstanding the generally recognized rule,
courts have often required corporate defendants to produce their

officers or agents for depositions at locations other than the
corporation's principal place of business where there has been
no showing that the defendant will suffer any resulting
financial hardship." *South Seas Catamaran, Inc. v. Motor Vessel
"Leeway"*, 120 F.R.D. 17, 21 fn. 5 (D.N.J. 1988). In addition, a
number of factors "serve to dissipate the presumption [that a
corporate party's deposition should be held at its principal
place of business and may persuade the Court to require the
deposition to be conducted in the forum district or some other
place." *Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. at 628-29.
These factors include the "location of counsel for the parties
in the forum district, the number of corporate representatives a
party is seeking to depose, the likelihood of significant
discovery disputes arising which would necessitate resolution by
the forum court; whether the persons sought to be deposed often
engage in travel for business purposes; and the equities with
regard to the nature of the claim and the parties'
relationship." *Id.* at 629 (internal citations omitted).

Pursuant to Federal Rule of Civil Procedure 26(c), a court
may issue a protective order to regulate the terms, conditions,
time or place of discovery. Defendants, as the moving party,
bear the burden of showing good cause for the issuance of a
protective order. Fed. R. Civ. P. 26(c). Here, Defendants have
not provided the Court with any evidence regarding the alleged

expense or undue burden associated with holding the depositions of Barnes and Saunders in New Jersey.  "Courts have often required corporate defendants to produce their officers or agents for depositions at locations other than the corporation's principal place of business where there has been no showing that the defendant will suffer any resulting financial hardship." *South Seas Catamaran, Inc. v. Motor Vessel "Leeway"*, 120 F.R.D. 17, 21 fn. 5 (D.N.J. 1988).  Furthermore, the Court finds that there are a number of circumstances that weigh against the entry of a protective order ordering that the depositions of Saunders and Barnes be conducted in California.  First, both the *pro se* Plaintiff and counsel for the Defendants are located in New Jersey, and it is established that Defendant Sedgwick does business in this district.  Also, considering the large number of discovery disputes that have developed thus far in this litigation, there is a high likelihood that disputes will arise during the depositions that may require resolution by the Court.  Therefore, because Defendants have not met their burden of showing good cause for the issuance of a protective order, the Court will deny Defendants' request to order that the depositions of Saunders and Barnes be held in California.  Accordingly, the Court, in its discretion and mindful that Rule 1 of the Federal Rules of Civil Procedure states that the Rules "should be construed and administered to secure just, speedy,

33

and inexpensive determination of every action and proceeding," will order that the depositions of Saunders and Barnes be either held via video at Sedgwick's New Jersey Office or at that location, with the expenses to be borne by Defendants.

The Court is not persuaded by Defendants' argument that Barnes is not an officer or managing agent within the meaning of Rule 30. The question of whether an individual is a managing agent, and thus subject to a notice of deposition, is answered on a fact-specific basis. *Triple Crown America, Inc. v. Biosynth AG*, Civil No. 96-7476, 1998 WL 227886, at *1-2 (E.D. Pa. 1998) (citing *United States v. Afram Lines (USA), Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994)). Doubts regarding an individual's status as a "managing agent" are resolved in favor of the examining party. *See Founding Church of Scientology v. Webster*, 802 F.2d 1448, 1452 (D.C. Cir. 1986); *In re Honda American Motor Co., Inc. Dealership Relations Litigation*, 168 F.R.D. 535, 540-41 (D. Md. 1996). The inquiry regarding the identification of a managing agent essentially involves the extent of the individual's decision-making discretion and unsupervised authority, the degree to which his interests converge with those of the corporation, and his general responsibilities, particularly with regard to the matters at issue in the litigation. *Triple Crown America, Inc. v. Biosynth AG*, Civil No. 96-7476, 1998 WL 227886, at *2 (citing *Founding*

34

*Church of Scientology*, 802 F.2d at 1453; *In re Honda American Motor Co., Inc. Dealership Relations Litigation*, 168 F.R.D. at 540-41).  Here, no evidence has been presented regarding any of the aforementioned criteria, but the Court does note that Barnes, as *Managing Partner* of Sedgwick's Los Angeles Office, likely has interests that align with those of Defendant Sedgwick, and has decision-making discretion and general authority consistent with that of a managing agent. Accordingly, the Court will order that the deposition of Barnes be conducted at Sedgwick's New Jersey office either in person or via video.

In sum, the Court finds that much of the discovery at issue is reasonably calculated to lead to the discovery of admissible evidence and is proper pursuant to Federal Rule of Civil Procedure 26.  Defendants have not shown that good cause exists for the issuance of a protective order as to the entire corpus of discovery noted in their submissions.  While Defendants bemoan that they have already answered 72 interrogatories in this matter, Defendants do not assert that Plaintiff has served interrogatories in excess of the pre-trial scheduling order's limit of 25 interrogatories per defendant.  (*See* D.E. 16, Pretrial Scheduling Order, at *2, ¶ 6).  The Court notes that Defendants have, thus far, answered 23 interrogatories directed to Defendant Keale; 20 interrogatories directed to Defendant

Robertson; 22 interrogatories directed to Defendant Tanenbaum;
and 17 interrogatories directed to Defendant Sedgwick. (*See*
Docket Entry Nos. 53-2, 53-3, Exhibits B-E to Defendants' Motion
for Protective Order). Accordingly, the Court finds that
Plaintiff has not exceeded the number of interrogatories per
defendant allotted to him, and that the additional 5
interrogatories directed to Defendant Sedgwick are proper. As
far as the sheer volume of discovery involved in this case, it
is the Court's determination that, considering the number of
Defendants, the claims involved, and the factual circumstances
alleged in Plaintiff's pleadings, the discovery at issue is not
disproportionate and the entry of a broad protective order is
therefore unwarranted. *See Cipollone*, 785 F.2d 1108; *A & B
Ingredients, Inc.*, 2010 WL 335616, at *3.

### C. Defendants' Motion for Sanctions

Lastly, the Court will address Defendants' motion for
sanctions. Defendants allege that Plaintiff has brought
"voluminous, vexatious and predominately irrelevant discovery
requests" as part of a strategy of forcing Defendants to incur
the maximum attorneys' fees possible, and that, consistent with
those claims, Plaintiff has failed to make court ordered
appearances on two occasions. (*See* D.E. 59-1, Defendants' Brief
in Support of Motion for Sanctions, at *1). In support of the
instant motion for sanctions Defendants emphasize Plaintiff's

failure to appear for a court-ordered, in-person hearing scheduled for 11:00 a.m. on June 15, 2012. *See id.* Defendants contend that, as a result of Plaintiff's failure to attend the hearing, Defendants unnecessarily incurred legal fees. *Id.* In addition, Defendants note that Plaintiff had previously failed to appear for a Court ordered conference scheduled for February 16, 2012, and has since appeared fifteen minutes late for a court-ordered teleconference on July 2, 2012. *Id.*

Plaintiff opposes the motion for sanctions, and asserts that his failure to attend the hearing was the result of his own scheduling mistake. (*See* D.E. 66, Plaintiff's Letter Brief in Opposition). Plaintiff alleges that he "incorrectly noted the hearing time for 1:30 p.m. when the matter was actually scheduled for 11:00 a.m.," and that he entered the courthouse shortly before noon and spend approximately one hour preparing his arguments in the court's library. *Id.* When Plaintiff finally entered the courtroom at approximately 1:00 p.m. the Court had already allowed defense counsel to leave the building on account of Plaintiff's non-appearance, and the Court had moved on to other matters. *Id.* Plaintiff alleges that he continued to sit in the courtroom, mistakenly believing that he was early for the hearing, when he was informed by a Court employee that the hearing was scheduled for 11:00 a.m. and that defense counsel had already left the courthouse. *Id.* at *1-2.

At that point Magistrate Judge Waldor returned to the courtroom, and Plaintiff explained his failure to appear for the hearing on the record and apologized for his mistake. *Id.* at *2.

It is established that a district court has the inherent power to sanction parties appearing before it for refusing to comply with its orders. *See, e.g.*, *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 242 (3d Cir. 2007). This inherent power was recognized by the United States Supreme Court in *United States v. Hudson*, 11 U.S. 32 (1812), where the Court held that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630-631 (1962).

In addition to the court's inherent authority, Federal Rule of Civil Procedure 16(f) provides that if a party fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a pretrial conference, a district court, upon motion or the court's own initiative, may issue sanctions. Rule 16 further states that "[i]nstead of or in addition to any other sanction, the court must order the party, its attorney, or

both to pay the reasonable expenses -- including attorney's fees
-- incurred because of any noncompliance with this rule, unless
the noncompliance was substantially justified or other
circumstances make an ward of expenses unjust." Fed. R. Civ. P.
16(f)(2).  Under Rule 16(d), monetary sanctions for
noncompliance with Rule 16 pretrial orders are required and
appropriate absent a showing that the violation was
"substantially justified" or the award of expenses is "unjust"
under the circumstances of the case. *Tracinda Corp. v.
DaimlerChrysler AG*, 502 F.3d 212, 241 (3d Cir. 2007).  As noted
by the Third Circuit in *Tracinda Corp.*, "'unjust' can be
variously defined as 'unfair,' 'unreasonable,' 'inequitable,' or
'harsh,'" and these definitions "invite a consideration of the
degree of the sanction in light of the severity of the
transgression[…]." *Id.*  Thus, whether a party's misconduct is
intentional, negligent, or inadvertent is a significant factor
in assessing the severity of the transgression at issue. S*ee
id.*

     Here, the Court, in its discretion, does not find that the
misconduct at issue warrants an award of sanctions.  Plaintiff's
failure to timely attend the June 15, 2012, conference at 11:00
a.m. appears to be the result of Plaintiff's own negligence and
not motivated by any improper purpose.  After arriving to the

courtroom late on June 15, 2012, Plaintiff explained his mistake on the record:

> Your Honor, I apologize for [missing the conference].  It was my understanding that the hearing was going to be held at 1:30.  I know we had a conference with Mr. Bruk last – end of last month.  And I – I think that I had expressed to the Court earlier, because I have a 7-month-old son, that usually the morning, I can't make it, so I had asked for the conference to be held after lunch.  And my apologies to the Court.  It was my understanding that it was 1:30.  I did not look at the calendar again.  I'll honestly admit that, Your Honor.  But I believe even when we spoke with Mr. Bruk about two weeks ago, it was the understanding that it was going to be in the afternoon and that there were no other matters scheduled.  That's my recollection.

(*See* D.E. 56, Transcript of June 15, 2012, Proceedings, at *2, ¶¶ 10-22).  The Court also recognizes that at the June 15, 2012 proceedings Magistrate Judge Waldor, after expressing her disappointment that Plaintiff forgot to check ECF before the

scheduled hearing, noted that Defendants had been given leave to file a motion for sanctions "in a vacuum," before the Court was apprised of Plaintiff's side of the story. *See id.* at *5, ¶¶ 19-24.

Defendants cite *Grant v. Omni Health Care Sys. of NJ, Inc.*, 2009 WL 3151322 (D.N.J. Sept. 24, 2009), and *Miller v. Unum Life Ins. Co. of America*, 2006 U.S. Dist. LEXIS 76079 (E.D. Pa. Oct. 19, 2006), in support of the instant motion for sanctions. Both cases may be distinguished from the instant matter. The offending attorney in *Grant* had a long history of misconduct, including, *inter alia*, serving and filing numerous documents late, unprofessional and discourteous conduct, missing deadlines, failing to appear on numerous occasions, and filing motions long after the deadlines set forth in scheduling orders had expired. *See* 2009 WL 3151322, at *1-5. While *Miller* did not feature a pattern of misconduct as egregious as that found in Grant, counsel in that case failed to attend a settlement conference on a date and time selected by counsel for no apparent reason, and in doing so caused opposing counsel to needlessly drive for over four hours from Reading, Pennsylvania to Philadelphia. *See* 2006 U.S. Dist. LEXIS 76079, at *2-3.

As noted above, Plaintiff has explained his failure to timely appear at the June 15, 2012, conference, and his failure to appear at said conference has not significantly hindered this

litigation.  It is this Court's determination that the transgression at issue does not warrant an award of sanctions. However, the Court notes that Plaintiff has unfortunately failed to appear or appeared late for more than one court-ordered conference or hearing, and the Court will not tolerate this behavior developing into an established pattern.  While the Court recognizes that parties may occasionally suffer unexpected trials and tribulations that hinder their ability to make court-ordered appearances, the Court also expects that litigants in this Court respect the judicial process and take appropriate care in ensuring that they correctly calendar court-ordered events, and notify the Court and counsel when they will be unavailable.  Accordingly, although the Court does not find that sanctions are appropriate at this juncture, continued failure to respect this Court's scheduled conferences and hearings may warrant the imposition of sanctions in the future.

**IV.  CONCLUSION**

For the foregoing reasons, and good cause shown,

IT IS on this 28th day of March, 2013,

**ORDERED** that Plaintiff's motion to amend his pleading is granted in part and denied in part.  The motion as to the proposed McGeehon amendment, the proposed breach of contract amendment, and the proposed amended factual allegations is

42

granted.  The Court denies Plaintiff's motion as to the proposed Saunders amendment.  Plaintiff shall hereafter modify his proposed Amended Complaint in accordance with this Opinion and file and serve his Amended Complaint within the time provided by the Federal Rules of Civil Procedure; and it is

**FURTHER ORDERED** that Defendants' motion for a protective order is granted in part and denied in part.  The discovery requests at issue are hereby modified in accordance with this Opinion.  The parties will immediately meet and confer regarding a plan to complete the outstanding discovery and file their joint proposal with the Court within ten days; and it is

**FURTHER ORDERED** that Defendants' motion for sanctions is denied.

                                        *s/ Steven C. Mannion*
                                        **HONORABLE STEVEN C. MANNION**
                                        **UNITED STATES MAGISTRATE JUDGE**

                                        3/28/2013 9:21:08 AM

Date: March 28, 2013